AO 91 (Rev. 11/11) Criminal Complaint

| | | |
|---|---|---|
| AUSA: Nhan Ho | | Telephone: (313) 226-9100 |
| Special Agent: Sherri Reynolds | | Telephone: (313) 202-3400 |

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

United States of America
   v.
D-1 Jayvon Randle
D-2 Jesse Hunter

Case No. 26-30125

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __October 23, 2025 to March 5, 2026__ in the county of __Wayne__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(o) | Possession of machineguns |
| 18 U.S.C. § 922(n) | Receipt of a firearm while under indictment |

This criminal complaint is based on these facts:
See the attached affdavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Sherri Reynolds, Special Agent-ATF
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: March 8, 2026

*Judge's signature*

City and state: Detroit, Michigan

Hon. Elizabeth A. Stafford, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# CRIMINAL COMPLAINT AND ARREST WARRANT

I, Sherri Reynolds, Special Agent for the Bureau of Alcohol, Tobacco, Firearms and Explosives, being duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. This affidavit is in support of criminal complaint and application for an arrest warrant for Jayvon Randle and Jesse Hunter for violations of 18 U.S.C. § 922(o) (possession of machinegun) and 18 U.S.C. § 922(n) (receipt of a firearm while under indictment).

2. I am a Senior Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since December of 2009. I am currently assigned to the Detroit Field Division. I completed twenty-six weeks of training, which was comprised of the Criminal Investigator Training Program and the ATF Special Agent Basic Training program at the Federal Law Enforcement Training Center in Glynco, Georgia. I received extensive training on firearms identification, common scenarios involving illegal firearms possession and firearms trafficking. Throughout my career, I have investigated or have been involved in hundreds of investigations that involve individuals who are prohibited persons in possession of firearms and/or the illegal use of possession of machine guns,

3.      The facts in this affidavit come from my personal observations, training, experience, conversations with ATF Special Agents, and information provided by other sworn law enforcement officers. This affidavit is intended to show that there is sufficient probable cause and does not set forth all the information known to law enforcement regarding this investigation.

## PROBABLE CAUSE

4.      On March 5, 2026, a probation officer from the Michigan Department of Corrections (MDOC), with assistance from the Detroit Police Department (DPD), conducted a compliance check at XXXXX Riverdale Avenue, Detroit, Michigan, which is Randle's registered probation address. The compliance check was conducted based on information obtained by law enforcement indicating that a suspect in a non-fatal shooting investigation was at the residence and is wanted for a probable cause arrest related to the shooting.

5.      There were seven occupants present at the residence at the time of the compliance check. Upon entry, officers observed only Randle and Hunter descending from the upstairs area. When instructed to identify his sleeping area, Randle directed the probation officer to a bedroom on the main floor. Because Randle had been observed coming from upstairs moments earlier, the probation officer also canvassed the upstairs area, which consisted of a single open space configured as a bedroom. During that canvass, officers observed two rounds of

2

ammunition in the top drawer of a white dresser, along with legal and medical documents addressed to both Randle and Hunter.

6. Just after departing the location, the probation officer was contacted by law enforcement, who requested that MDOC remain at the location as a search warrant was in the process of being obtained. The probation officer learned from a law enforcement officer that an individual had posted images on social media depicting himself holding a firearm in what the probation officer believed to be the basement of the residence. The probation officer returned to the residence at this time.

7. When the probation officer returned to the residence, contact was made with the homeowner. The homeowner arrived and consented to a search of the residence, officers reentered the upstairs area. Officers observed a floor vent located in the middle of the room with a partially visible vent cover. When officers shined a flashlight through the vent opening, they observed a silver magazine loaded with ammunition at the bottom of the vent. The vent cover was then removed and approximately four firearms with magazines were observed in a compartment under the floor immediately adjacent to the vent.



8. Inside the vent, officers recovered four firearms, each equipped with high-capacity magazines loaded with ammunition (picture above). They are:

- A Smith & Wesson Model SD9VE handgun, reported stolen from Ecorse, Michigan on October 23, 2025;

- A Glock Model 23 pistol with a black slide and tan frame, equipped with what appears to be a black metal MCD;

- A Glock Model 21 pistol camouflage frame and slide, equipped with what appears to be a purple 3D-printed MCD, reported stolen from Aiken, South Carolina on March 21, 2016; and

4

- A Glock Model 23 pistol with tan slide and black frame and aftermarket trigger, equipped with what appears to be a purple 3D-printed MCD.

9. When an officer was searching the vent area, he located an empty firearm magazine and when he attempted to retrieve the magazine, he cut his finger on the edge of the vent. This is notable because when Randle emerged from the upstairs bedroom area, he had tissue wrapped around his hand. Later, when the officer was searching the vent area, Randle even requested a tissue for a cut he indicated he had sustained on his hand.

10. After DPD obtained a state search warrant, officers also recovered an additional firearm from a vent located in the basement: a Taurus Model 709 Slim pistol reported stolen from Detroit on February 6, 2020.



11. According to preliminary analysis conducted through the National Integrated Ballistic Information Network ("NIBIN"), two of the recovered firearms are linked to multiple prior shootings:

- The stolen Glock Model 21, equipped with what appears to be an MCD, is linked to a shooting that occurred in January 2025.

- The stolen Smith & Wesson handgun is linked to four separate shootings, including a February 2026 felonious assault, as well as shootings that occurred in September 2025, July 2025, and August 2020.

12. A machinegun conversion device ("MCD"), commonly referred to as a "switch," is designed to convert a semi-automatic firearm into a fully automatic firearm capable of expelling multiple rounds with a single pull of the trigger. Because the sole purpose of such a device is to convert a firearm to fully automatic fire, the device itself is classified as a machinegun under federal law. After reviewing images of the recovered firearms, an ATF Special Agent with specialized training in the identification of MCDs confirmed that the devices affixed to the rear of the three pistols appeared to be MCDs.

13. The circumstances described above establish probable cause to believe that Randle and Hunter possessed the firearms and MCDs recovered from the residence. Both individuals were observed emerging from the upstairs area

6

immediately before officers discovered ammunition and personal documents addressed to them in that same space, indicating that the area was used by and associated with them. Firearms and loaded magazines were subsequently recovered from a compartment under the floor next to the vent located within that same area.

14. The concealment of the firearms within a vent located in the room associated with Randle and Hunter supports the inference that they knew of and had access to those firearms. Based on my training and experience, individuals who illegally possess firearms often conceal them in areas they control—such as vents, furniture, or other hidden spaces within their sleeping areas—to maintain access while avoiding detection. Additionally, Randle had a cut on his finger when he emerged from upstairs that was actively bleeding, which is consistent with an officer later cutting his finger while retrieving a firearm magazine from the same vent.

15. The recovered firearms were equipped with machinegun conversion devices that were plainly visible on the rear portion of the pistols. Based on my training and experience, individuals who possess firearms equipped with such devices are typically aware of their presence and function because the devices must be intentionally installed for the firearm to operate in a fully automatic manner. During this investigation, law enforcement also identified communications among individuals known to associate with Randle and Hunter discussing MCDs,

including the use of slang terms commonly used to refer to such devices, and sharing images of guns equipped with what appeared to be MCDs. These communications indicate familiarity within their circle with MCD and their function. The presence of multiple firearms equipped with these devices in the same concealed location further supports the inference that the individuals storing and accessing those firearms were aware of the devices and their purpose.

16. Taken together, these facts provide probable cause to believe that Randle and Hunter knowingly possessed the machineguns recovered from the upstairs vent, either individually or jointly.

17. Law enforcement databases and MDOC records reflect that both Randle and Hunter are currently assigned Youthful Trainee (HYTA) status arising from deferred convictions for Assault with a Dangerous Weapon (Felonious Assault) and Felony-Firearm. These convictions stem from an incident on February 17, 2025, during which a victim was physically assaulted by multiple individuals, including being stomped on and repeatedly struck in the face and midsection. The assault was recorded and later posted on a co-defendant's social media account. After the victim attempted to leave the location, both Randle and Hunter pointed firearms at the victim. On July 3, 2025, Randle was sentenced to a two-year term of probation. On August 25, 2025, Hunter was sentenced to a two-year term of probation.

18. The probation orders for Randle and Hunter prohibit them from using any object as a weapon; owning, using, or possessing any weapon or imitation weapon; or associating with individuals known to possess such items. These prohibitions, combined with the apparent effort to conceal the firearms in a vent and direct the probation officer away from the upstairs area where the firearms and their personal documents were located, support the inference that Randle and Hunter knew they were prohibited from possessing firearms.

19. The probation orders for both Randle and Hunter state that "[j]udgment of guilty is deferred." As a result, there is reason to believe that Randle and Hunter are aware that their criminal matters remain pending and that they are "under indictment" while on HYTA status. *United States v. Rolon,* 165 F.4th 1036, 1039–40 (6th Cir. 2026). One of the firearms recovered from the residence was reported stolen in October 2025, after both Randle and Hunter had been placed on HYTA status. Accordingly, there is probable cause to believe that Randle and Hunter received that firearm while under indictment.

## CONCLUSION

20. Based on the information included in the paragraphs above probable cause exists that on or about March 5, 2026, in the Eastern District of Michigan, Randle and Hunter possessed machineguns in violation of 18 U.S.C. § 922(o), and that between on or about October 23, 2025 and March 5, 2026, in the same judicial

9

district, Randle and Hunter received a firearm while under indictment, in violation of 18 U.S.C. § 922(n).

_____
Sherri Reynolds
ATF Special Agent

Sworn to before me and signed in
my presence and/or by reliable electronic means.

_____
HONORABLE ELIZABETH A. STAFFORD
UNITED STATES MAGISTRATE JUDGE

Date: March 8, 2026